IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

---

COMMONWEALTH LAND TITLE
INSURANCE COMPANY,

                       Plaintiff,

    vs.

MICHAEL J. MATTICK and
BYGIE S. MATTICK,

                      Defendants.

3: 01 cv 44- Mo

**COMPLAINT FOR A
DECLARATORY JUDGMENT**

---

Commonwealth Land Title Insurance Company ("Commonwealth"), complaining of the defendants Michael J. Mattick and Bygie S. Mattick (the "Matticks"), alleges and says as follows:

### Parties' Jurisdiction and Venue

1.     Commonwealth is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania with an office and principal place of business in Richmond, Virginia.

2.     Upon information and belief, the Matticks are both citizens and residents of Mecklenburg county, North Carolina.

3.     This Court has jurisdiction over these claims and parties pursuant to 28 USC §1332 (diversity of citizenship).

4.     Upon information and belief, the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

5.     Venue is proper in this Court pursuant to 28 USC §1391(a).

HTPL:125104.1

## Statement of Facts

6.     On or about December 29, 1999, the Matticks acquired certain property referred to generally as 4741 Hedgemore Drive, Unit 2-T, Charlotte, North Carolina 28209 (the "Property") from Stephen Todd Douglas. A copy of the deed evidencing conveyance is attached hereto as *Exhibit A*.

7.     At the time of the purchase, Commonwealth issued a policy of title insurance to the Matticks with number A60-631650 (the "Policy"). A copy of the Policy is attached hereto as *Exhibit B*.

8.     Upon information and belief, Stephen T. Douglas is the son of Bygie S. Mattick.

9.     At the time the Matticks purchased the Property, Ben E. Douglas, Jr. resided at the Property.

10.     Upon information and belief, Ben E. Douglas, Jr. is the father of Stephen T. Douglas and the former husband of Bygie S. Mattick.

11.     After purchasing the Property, the Matticks sought to evict Ben E. Douglas, Jr. from the Property; however, Ben E. Douglas, Jr. refused to vacate the premises.

12.     On or about January 21, 2000, the Matticks filed a Complaint and Summary Ejectment action to evict Ben E. Douglas, Jr. from the Property and to recover monthly rental payments. This action was filed in Magistrate's Court in Mecklenburg County, North Carolina and had Civil Action No. 00-CVM-2819 (the "Matticks Lawsuit").

13.     On February 8, 2000, Ben E. Douglas, Jr. filed a Verified Complaint in an action entitled Ben E. Douglas, Jr. v. Stephen T. Douglas, Michael J. Mattick and Bygie S. Mattick. This action was filed in Superior Court in Mecklenburg County, North Carolina and had Civil Action No. 00-CVS-1895 (the "Douglas Lawsuit"). A copy of the Complaint of Ben E. Douglas, Jr. is attached hereto as *Exhibit C*.

14.     With the consent of all the parties to the lawsuits, they were consolidated and transferred to District Court in Mecklenburg County, North Carolina.

15.     On or about February 23, 2000, the attorney for the Matticks asked Commonwealth to pay for a defense to the Douglas Lawsuit.

HTPL:125104.1

16.    In his Complaint, Ben E. Douglas, Jr. alleged that based on the conduct of Stephen T. Douglas and the Matticks, including but not limited to, a conspiracy and other tortious activities, Stephen T. Douglas and the Matticks had schemed to deprive him of his ownership interest in the Property.

17.    The activities alleged in the Complaint fell outside the scope of covered matters under the Policy.

18.    Accordingly, Commonwealth denied coverage.

19.    Stephen T. Douglas and the Matticks continued to defend against the Douglas Lawsuit and ultimately prevailed on a motion for directed verdict at the trial of the matter.

20.    The Matticks have now asserted that Commonwealth breached the Policy by failing to pay for their defense against the Douglas Lawsuit.

21.    The Matticks have also alleged that such activity constitutes bad faith which would entitle them to punitive damages, fraud, and unfair and deceptive trade practices under N.C.G.S. §75-1.1.

22.    The Matticks claim to have incurred fees and costs in defending the Douglas Lawsuit totaling $35,365.58.

23.    The Matticks assert that such amount should be trebled pursuant to N.C.G.S. §75-16, and that they are entitled to punitive damages and attorneys' fees.

24.    While Commonwealth believes it has acted properly and pursuant to the terms of the Policy and that the Matticks are entitled to nothing, the Matticks' allegations place the amount in controversy at a number greater than $75,000.00.

## Claim for Declaratory Judgment

25.    The allegations of paragraphs numbered 1 through 24 are incorporated by reference.

26.    An actual controversy exists between the parties within the jurisdiction of the Court.

27.    Commonwealth is entitled to a declaration, pursuant to 28 USC §2201 that it

HTPL:125104.1

has no duty to provide a defense to or to indemnify the Matticks pursuant to the terms of the Policy and that it owes nothing to the Matticks

WHEREFORE, Commonwealth prays the Court as follows:

(1)     That the Court enter judgment declaring that Commonwealth had no duty to provide a defense to the Matticks in the Matticks and Douglas Lawsuits and that Commonwealth owes nothing to the Matticks;

(2)     That Commonwealth have and recover its costs in this action, including any attorneys'fees which may be allowed by law;

(3)     That the Court grant such other and further relief as it deems just and proper.

This the _23_ day of _January_, 2001.

HORACK, TALLEY, PHARR & LOWNDES, P.A.

By: _Robert B M Neill_

Robert B. McNeill\State Bar No. 13038
Attorneys for Commonwealth Land Title Insurance
    Corporation
2600 One First Union Center
301 South College Street
Charlotte, North Carolina 28202-6038
Telephone: (704) 377-2500
Facsimile: (704) 372-0448

HTPL:125104.1

FOR REGISTRATION JUDITH A. GIBSON
REGISTER OF DEEDS
MECKLENBURG COUNTY, NC
1999 DEC 29 02:34 PM
BOOK:10999 PAGE:806-810 FEE:$10.00
NC REAL ESTATE EXCISE TAX:$109.00
INSTRUMENT # 1999227643

| Excise Tax $109.00 | Recording Time, Book and Page |
|---|---|

Tax Lot No. ___175-143-53_____          Parcel Identifier Number _____

Verified by _____ County on the ____ day of _____, 19 _____

by _____

Mail after recording to: GRANTEE BOX ADDRESS

This instrument was prepared by:          Samuel S. Williams

| Brief description for the Index: | 4741 Hedgemore Drive, Unit 2-T, Charlotte, NC 28209 |
|---|---|

## NORTH CAROLINA GENERAL WARRANTY DEED

THIS DEED made this __29th__ day of __December__, 1999, by and between

| GRANTOR | GRANTEE |
|---|---|
| Stephen Todd Douglas, unmarried | Michael J. Mattick and wife, Bygie S. Mattick<br>4140 Arbor Way<br>Charlotte, NC 28211 |

The designation Grantor and Grantee as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WITNESSETH, that the Grantor for a valuable consideration paid by the Grantee, the receipt of which is hereby acknowledged, has and by these presents does grant, bargain, sell and convey unto the Grantee in fee simple, all that certain lot or parcel of land situated in the City of __Charlotte__, _____ Township, __Mecklenburg__ County, North Carolina and more particularly described as follows:

BEING all of that certain Condominium Unit known as 4741 Hedgemore Drive, Unit 2-T of the Franciscan Terrace Condominiums, as described in the Declarations of the Franciscan Terrace Condominium under the North Carolina Unit Ownership Act recorded in Deed Book 4317 at Page 179 and in Unit Ownership File No. 88 of the Mecklenburg County Public Registry (which documents and plans are referred to and incorporated herein by reference in their entirety), together with a .7979 percent undivided interest in the Common Areas and Facilities of the Franciscan Terrace Condominiums as hereinabove described.



The property hereinabove described was acquired by Grantor by instrument recorded in Book 7205 at Page 805.

A map showing the above described property is recorded in Plat Book _____ Page _____.

TO HAVE AND TO HOLD the aforesaid lot or parcel of land and all privileges and appurtenances thereto belonging to the Grantee in fee simple.

And the Grantor covenants with the Grantee, that Grantor is seized of the premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that Grantor will warrant and defend the title against the lawful claims of all persons whomsoever except for the exceptions hereinafter stated. Title to the property hereinabove described is subject to the following exceptions:

All valid and enforceable restrictions, easements and conditions of record and ad valorem taxes for 2000 and following years, not yet due and payable.

IN WITNESS WHEREOF, the Grantor has hereunto set his hand and seal, or if corporate, has caused this instrument to be signed in its corporate name by its duly authorized officers and its seal to be hereunto affixed by authority of its Board of Directors, the day and year first above written.

_____     _____(SEAL)
(Corporate Name)       Stephen Todd Douglas

By: _____     _____(SEAL)

_____ President     _____(SEAL)

ATTEST:     _____(SEAL)

_____
_____ Secretary (Corporate Seal)

State of North Carolina., Mecklenburg County.

I, a Notary Public of the County and State aforesaid, certify that Stephen Todd Douglas Grantor, personally appeared before me this day and acknowledged the execution of the foregoing instrument. Witness my hand and official stamp or seal, this 29 day of December , 1999.

My commission expires: 3/14/2002     _____
Notary Public

State of North Carolina, Mecklenburg County.

SEAL-STAMP     I, a Notary Public of the County and State aforesaid, certify that _____ personally came before me this day and acknowledged that s/he is _____ Secretary of North Carolina corporation, and that by authority duly given and as the act of the corporation, the foregoing instrument was signed in its name by its _____ President, sealed with its corporate seal and attested by her/him as its _____ Secretary.
Witness my hand and official stamp or seal, this_____ day of_____, 1999.

My commission expires: _____     _____
Notary Public

The foregoing Certificate(s) of _____ is/are certified to be correct. This instrument and this certificate are duly registered at the date and time and in the Book and Page shown on the first page hereof.

_____ REGISTER OF DEEDS FOR _____ COUNTY

By _____ Deputy/Assistant Register of Deeds.



# JUDITH A. GIBSON
## REGISTER OF DEEDS , MECKLENBURG COUNTY
## COUNTY & COURTS OFFICE BUILDING
## 720 EAST FOURTH STREET
## CHARLOTTE NC 28202

| | |
|---|---|
| **Filed For Registration:** | 12/29/1999 02:36 PM |
| **Book:** | RE  10998  Page: 808-810 |
| **Document No.:** | 1999227643 |
| | DEED  3 PGS  $10.00 |
| **NC REAL ESTATE EXCISE TAX:** | $109.00 |
| **Recorder:** | LISA SHARPE |

**State of North Carolina, County of Mecklenburg**

The foregoing certificate of  SHERRY S WILLIAMS Notary  Is certified to be correct. This 29TH of December 1999

JUDITH A. GIBSON, REGISTER OF DEEDS By: *Lisa  C. Sharpe*
Deputy/Assistant Register of Deeds

**1** ||||||||||||||||||||||||||||||

*1999227643*

# Commonwealth Land Title Company of North Carolina

Charlotte Plaza, 201 South College Street, Suite 1440, Charlotte, NC 28244
704-376-3503  800-432-6462  Fax: 704-373-0824

Mr and Mrs Michael J Mattick
4740 Arbor Way
Charlotte NC 28211

Owner ID: A60-631650
Loan ID: G32-617228
Cmt ID:
   Owner: Mattick, MJ
Property: Hedgemore Unit 2-T

Samuel S Williams
Attorney at Law
P O Box 32635
Charlotte NC 28232

First Trust Bank
100 Queens Road
Charlotte NC 28204

704-376-0011/Fax: 704-376-0026

| | | | | |
|---|---|---|---|---|
| Owner Cov: | $55,000.00 | | Total: | $76.40 |
| Loan Cov: | $55,000.00 | | Amt Paid: | $76.40 |
| Premium: | 76.40 | | Amt Due: | $0.00 |

ENCLOSED IS YOUR COPY OF OUR POLICY.

Please accept our thanks for this expression of your confidence in
Commonwealth Land Title Insurance Company.

Commonwealth invented title insurance in 1876 and has become one of the
largest title insurers in the country with assets of over $300,000,000.00.
Today, Commonwealth offers title insurance services nationwide--and in Puerto
Rico, Guam and the Virgin Islands--through 200 branch offices, 5,000 agents
and 10,000 approved attorneys.

If you have any questions concerning this policy, please contact the issuing
office at the address shown above. Please refer to our file number in your
correspondence.

If you need to make a claim under this policy, please write to:
       6630 West Broad Street
       Richmond, VA  23230

We hope you will think of Commonwealth the next time you need title insurance.
We'll prove again that the Commonwealth slogan is more than just words. It's
a philosophy we put to work every day. We turn obstacles into opportunities.

       COMMONWEALTH LAND TITLE COMPANY OF NORTH CAROLINA
       Kristin L. Harmon, Vice-President and Underwriting Counsel
       Judith W. Farrell, Vice-President

If you have questions or need more information, please contact us at the address and phone number(s) above.

Thank you for doing business with  Commonwealth Land Title Company of North Carolina.

File ID:   *G043241*   Issued: 01-28-2000  Policy ID: G32-617228  [76773]  Printed: 01-28-2000 by HELEN

OWNER'S POLICY OF TITLE INSURANCE



## Commonwealth
A LANDAMERICA COMPANY

POLICY NUMBER

**A60-631650**

SUBJECT TO THE EXCLUSIONS FROM COVERAGE, THE EXCEPTIONS FROM COVERAGE CONTAINED IN SCHEDULE B AND THE CONDITIONS AND STIPULATIONS, COMMONWEALTH LAND TITLE INSURANCE COMPANY, a Pennsylvania corporation, herein called the Company, insures, as of Date of Policy shown in Schedule A, against loss or damage, not exceeding the Amount of Insurance stated in Schedule A, sustained or incurred by the insured by reason of:

1. Title to the estate or interest described in Schedule A being vested other than as stated therein;
2. Any defect in or lien or encumbrance on the title;
3. Unmarketability of the title;
4. Lack of a right of access to and from the land.

The Company will also pay the costs, attorneys' fees and expenses incurred in defense of the title, as insured, but only to the extent provided in the Conditions and Stipulations.

IN WITNESS WHEREOF, COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed by its duly authorized officers, the Policy to become valid when countersigned by an authorized officer or agent of the Company.

**COMMONWEALTH LAND TITLE INSURANCE COMPANY**

Attest: *Wm. Chadwick Perrine*
Secretary



By: *Janet A. Alpert*
President

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the affect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.

2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.

3. Defects, liens, encumbrances, adverse claims or other matters:

   (a) created, suffered, assumed or agreed to by the insured claimant;

   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;

   (c) resulting in no loss or damage to the insured claimant;

   (d) attaching or created subsequent to Date of Policy; or

   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

4. Any claim, which arises out of the transaction vesting in the Insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:

   (a) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or

   (b) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:

   (i) to timely record the instrument of transfer; or

   (ii) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

Case 3:01-cv-00044-GCM   Document 1   Filed 01/24/01   Page 9 of 23

# *Commonwealth Land Title Insurance Company*

## Owner's Policy

### Schedule A

Policy ID: A60-631650          Associated ID: G32-617228

Coverage: $55,000.00               Premium: $76.40

Policy Date: December 29, 1999 at 02:36pm in Mecklenburg County

1.  Name of Insured: Michael J. Mattick and wife, Bygie S. Mattick

2.  The estate or interest in the land described herein and which is covered by this policy is fee simple and is at Date of Policy vested in the Insured.

3.  The land referred to in this policy is in the County of Mecklenburg, State of North Carolina, and is described as follows:

    See Attached Rider

*Owner Policy*

Office:  **Commonwealth Land Title Company of North Carolina**
         **Charlotte Plaza, 201 South College Street, Suite 1440, Charlotte, NC 28244  704-376-3503/800-432-6462**

File ID:  G043241                                                                                   Page 1

# Commonwealth Land Title Insurance Company
## Rider

File Number:G043241

      BEING all of that certain Condominium Unit known as 4741 Hedgemore Drive, Unit 2-T of the Franciscan Terrace Condominiums, as described in the Declarations of the Franciscan Terrace Condominium under the North Carolina Unit Ownership Act recorded in Deed Book 4317 at Page 179 and in Unit Ownership File No. 88 of the Mecklenburg County Public Registry (which documents and plans are referred to and incorporated herein by reference in their entirety), together with a .7979 percent undivided interest in the Common Areas and Facilities of the Franciscan Terrace Condominiums as hereinabove described.

*Rider*

Office:    **Commonwealth Land Title Company of North Carolina**
        **Charlotte Plaza, 201 South College Street, Suite 1440, Charlotte, NC 704-376-3503/800-432-6462**

File ID:    G043241   Issued: 01-28-2000   TO: A80-631656  (7/97FL)   Printed: 01-28-2000 by HELEN

Case 3:01-cv-00044-GCM   Document 1   Filed 01/24/01   Page 11 of 23

# Commonwealth Land Title Insurance Company

## Owner's Policy

### Schedule B

This policy does not insure against loss or damage by reason of the Deed(s) of Trust, if any, described in Schedule A, or the following:

1. Taxes for the year 2000 and subsequent years, not yet due and payable.

2. The Condominium document(s) containing restrictive covenants and other provisions recorded in Book 4317, Page 179 and amended in Book 4411, Page 304, aforesaid county registry and any other condominium document(s) referred to in or related to said condominium document(s). The Company insures that the restrictive covenants which affect the use of the land have not been violated and that a future violation thereof will not cause a forfeiture or reversion of title.

3. Easement(s) to Southern Public Utilities recorded in Book 705, Page 321 and Book 814, Page 571, aforesaid county registry. (As to the Common Area only)

4. Agreement for sewer easement recorded in Book 1414, Page 361, aforesaid county registry.(As to the Common Area only)

5. Storm sewer easement recorded in Book 2963, Page 463, aforesaid county registry.(As to the Common Area only)

6. Easement(s) to the City of Charlotte recorded in Book 3097, Page 248 and Book 3130, Page 573, aforesaid county registry. (As to the Common Area only)

7. Rights of others in and to the continued and uninterrupted flow of Sugar Creek affecting the land.

8. Right(s) of way of Hedgemore Drive.

9. Rights of others in and to party walls, common areas and facilities.

10. No liability is assumed for payment of homeowner's dues and/or assessments set out in the aforesaid restrictions.

11. Deed of Trust from Michael J. Mattick and Bygie S. Mattick to John J. Keanne, Trustee for First Trust Bank dated December 29, 1999 and recorded on December 29, 1999 at 02:36pm, in Book 10998, Page 811, Mecklenburg County Registry, North Carolina securing the sum of $55,000.00.

*Owner Policy*

Office: **Commonwealth Land Title Company of North Carolina**
Charlotte Plaza, 201 South College Street, Suite 1440, Charlotte, NC 28244 704-376-3503/800-432-6462

# *Commonwealth Land Title Insurance Company*

## Owner's Policy

### Signature Page

Authorized Signature: *Eleni A Pappas*

*Owner Policy*

Office: **Commonwealth Land Title Company of North Carolina**
**Charlotte Plaza, 201 South College Street, Suite 1440, Charlotte, NC 28244  704-376-3503/800-432-6462**

**7. DETERMINATION, EXTENT OF LIABILITY AND COINSURANCE.**

This policy is a contract of indemnity against actual monetary loss or damage sustained or incurred by the insured claimant who has suffered loss or damage by reason of matters insured against by this policy and only to the extent herein described.

(a) The liability of the Company under this policy shall not exceed the least of:

(i) the Amount of Insurance stated in Schedule A; or,

(ii) the difference between the value of the insured estate or interest as insured and the value of the insured estate or interest subject to the defect, lien or encumbrance insured against by this policy.

(b) In the event the Amount of Insurance stated in Schedule A at the Date of Policy is less than 80 percent of the value of the insured estate or interest or the full consideration paid for the land, whichever is less, or if subsequent to the Date of Policy an improvement is erected on the land which increases the value of the insured estate or interest by at least 20 percent over the Amount of Insurance stated in Schedule A, then this Policy is subject to the following:

(i) where no subsequent improvement has been made, as to any partial loss, the Company shall only pay the loss pro rata in the proportion that the amount of insurance at Date of Policy bears to the total value of the insured estate or interest at Date of Policy; or

(ii) where a subsequent improvement has been made, as to any partial loss, the Company shall only pay the loss pro rata in the proportion that 120 percent of the Amount of Insurance stated in Schedule A bears to the sum of the Amount of Insurance stated in Schedule A and the amount expended for the improvement.

The provisions of this paragraph shall not apply to costs, attorneys' fees and expenses for which the Company is liable under this policy, and shall only apply to that portion of any loss which exceeds, in the aggregate, 10 percent of the Amount of Insurance stated in Schedule A.

(c) The Company will pay only those costs, attorneys' fees and expenses incurred in accordance with Section 4 of these Conditions and Stipulations.

**8. APPORTIONMENT.**

If the land described in Schedule A consists of two or more parcels which are not used as a single site, and a loss is established affecting one or more of the parcels but not all, the loss shall be computed and settled on a pro rata basis as if the amount of insurance under this policy was divided pro rata as to the value on Date of Policy of each separate parcel to the whole, exclusive of any improvements made subsequent to Date of Policy, unless a liability or value has otherwise been agreed upon as to each parcel by the Company and the insured at the time of the issuance of this policy and shown by an express statement or by an endorsement attached to this policy.

**9. LIMITATION OF LIABILITY.**

(a) If the Company establishes the title, or removes the alleged defect, lien or encumbrance, or cures the lack of a right of access to or from the land, or cures the claim of unmarketability of title, all as insured, in a reasonably diligent manner by any method, including litigation and the completion of any appeals therefrom, it shall have fully performed its obligations with respect to that matter and shall not be liable for any loss or damage caused thereby.

(b) In the event of any litigation, including litigation by the Company or with the Company's consent, the Company shall have no liability for loss or damage until there has been a final determination by a court of competent jurisdiction, and disposition of all appeals therefrom, adverse to the title as insured.

(c) The Company shall not be liable for loss or damage to any insured for liability voluntarily assumed by the insured in settling any claim or suit without the prior written consent of the Company.

**10. REDUCTION OF INSURANCE; REDUCTION OR TERMINATION OF LIABILITY.**

All payments under this policy, except payments made for costs, attorneys' fees and expenses, shall reduce the amount of the insurance pro tanto.

**11. LIABILITY NONCUMULATIVE.**

It is expressly understood that the amount of insurance under this policy shall be reduced by any amount the Company may pay under any policy insuring a mortgage to which exception is taken in Schedule B or to which the insured has agreed, assumed, or taken subject, or which is hereafter executed by an insured and which is a charge or lien on the estate or interest described or referred to in Schedule A, and the amount so paid shall be deemed a payment under this policy to the insured owner.

**12. PAYMENT OF LOSS.**

(a) No payment shall be made without producing this policy for endorsement of the payment unless the policy has been lost or destroyed, in which case proof of loss or destruction shall be furnished to the satisfaction of the Company.

(b) When liability and the extent of loss or damage has been definitely fixed in accordance with these Conditions and Stipulations, the loss or damage shall be payable within 30 days thereafter.

**13. SUBROGATION UPON PAYMENT OR SETTLEMENT.**

(a) The Company's Right of Subrogation.

Whenever the Company shall have settled and paid a claim under this policy, all right of subrogation shall vest in the Company unaffected by any act of the insured claimant.

The Company shall be subrogated to and be entitled to all rights and remedies which the insured claimant would have had against any person or property in respect to the claim had this policy not been issued. If requested by the Company, the insured claimant shall transfer to the Company all rights and remedies against any person or property necessary in order to perfect this right of subrogation. The insured claimant shall permit the Company to sue, compromise or settle in the name of the insured claimant and to use the name of the insured claimant in any transaction or litigation involving these rights or remedies.

If a payment on account of a claim does not fully cover the loss of the insured claimant, the Company shall be subrogated to these rights and remedies in the proportion which the Company's payment bears to the whole amount of the loss.

If loss should result from any act of the insured claimant, as stated above, that act shall not void this policy, but the Company, in that event, shall be required to pay only that part of any losses insured against by this policy which shall exceed the amount, if any, lost to the Company by reason of the impairment by the insured claimant of the Company's right of subrogation.

(b) The Company's Rights Against Non-insured Obligors.

The Company's right of subrogation against non-insured obligors shall exist and shall include, without limitation, the rights of the insured to indemnities, guaranties, other policies of insurance or bonds, notwithstanding any terms or conditions contained in those instruments which provide for subrogation rights by reason of this policy.

**14. ARBITRATION**

Unless prohibited by applicable law, either the Company or the insured may demand arbitration pursuant to the Title Insurance Arbitration Rules of the American Arbitration Association. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. All arbitrable matters when the Amount of Insurance is $1,000,000 or less shall be arbitrated at the option of either the Company or the insured. All arbitrable matters when the Amount of Insurance is in excess of $1,000,000 shall be arbitrated only when agreed to by both the Company and the insured. Arbitration pursuant to this policy and under the Rules in effect on the date the demand for arbitration is made or, at the option of the insured, the Rules in effect at Date of Policy shall be binding upon the parties. The award may include attorneys' fees only if the laws of the state in which the land is located permit a court to award attorneys' fees to a prevailing party. Judgment upon the award rendered by the Arbitrator(s) may be entered in any court having jurisdiction thereof.

The law of the situs of the land shall apply to an arbitration under the Title Insurance Arbitration Rules.

A copy of the Rules may be obtained from the Company upon request.

**15. LIABILITY LIMITED TO THIS POLICY; POLICY ENTIRE CONTRACT.**

(a) This policy together with all endorsements, if any, attached hereto by the Company is the entire policy and contract between the insured and the Company. In interpreting any provision of this policy, this policy shall be construed as a whole.

(b) Any claim of loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest covered hereby or by any action asserting such claim, shall be restricted to this policy.

(c) No amendment of or endorsement to this policy can be made except by a writing endorsed hereon or attached hereto signed by either the President, a Vice President, the Secretary, an Assistant Secretary, or validating officer or authorized signatory of the Company.

**16. SEVERABILITY.**

In the event any provision of the policy is held invalid or unenforceable under applicable law, the policy shall be deemed not to include that provision and all other provisions shall remain in full force and effect.

**17. NOTICES, WHERE SENT.**

All notices required to be given the Company and any statement in writing required to be furnished the Company shall include the number of this policy and shall be addressed to: Consumer Affairs Department, P.O. Box 27567, Richmond, Virginia 23261-7567.

Case 3:01-cv-00044-GCM   Document 1   Filed 01/24/01   Page 14 of 23

STATE OF NORTH CAROLINA  FILED  IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
COUNTY OF MECKLENBURG 00 FEB -8 PM 2: 31  00-CVS- 1895 LCB

MECKLENBURG CO., C.S.C.

BEN E. DOUGLAS,              )
                            )
        Plaintiff,          )    BY _____
                            )
        v.                  )              COMPLAINT
                            )
STEPHEN T. DOUGLAS,         )
MICHAEL J. MATTICK, and)
BYGIE S. MATTICK,           )
                            )
        Defendants.         )
_____)

The plaintiff, complaining of the defendants, alleges and says:

1.      The plaintiff is a citizen and resident of Mecklenburg County, North Carolina.

2.      The defendants, upon information and belief, are citizens and residents of
        Mecklenburg County, North Carolina.

3.      The defendant, Stephen T. Douglas, is the son of the plaintiff.

4.      The defendant, Bygie S. Mattick is the former wife of the plaintiff.

5.      The defendant Bygie S. Mattick is currently married to the defendant, Michael J.
        Mattick.

## CLAIM I

6.      Prior to September 1, 1989, the plaintiff was involved in litigation with Greenpark
        Inn, Inc., a North Carolina corporation. In settlement of the plaintiff's claims
        against the Greenpark Inn, Inc., the plaintiff agreed to take ownership of two
        parcels of land located in Watauga County, North Carolina.

7.      The two parcels of land in Watauga County, North Carolina paid in settlement of
        said litigation to the plaintiff are more particularly described as follows:

## TRACT I

1

Lying and being in the town of Blowing Rock, Watauga County, North Carolina, fronting on Terry Acres Circle and being more particularly described as follows:

Beginning at an iron pin at or near the paved portion of Terry Acres Circle in the common corner of Lot 9 herein conveyed and lot 10, such pin being North 53-04 West 67.30 feet and thence North 49-58 West 32.50 feet from an iron pin being the corner of the property owned by James White (book 220, page 565) and running from beginning iron South 44-55 West 134.85 feet to an iron; thence North 44-42 West 121.18 feet to an iron, corner of Lot 8; thence North 53-38 East 146.92 feet to an iron in or near the paved portion of Terry Acres Circle; thence the following courses and distances with the paved portion of Terry Acres Circle: (A.) South 34-55 East 30.60 feet; (B) South 37-22 East 53.30 feet; (C) South 49-58 East 16.00 feet to the beginning iron, containing 15,280 square feet, more or less.

The above-described property constitutes Lot 9 as shown on a plat of survey entitled "Survey for Greenpark Inn", dated October 3, 1988, and revised on November 14, 1988, prepared by John W. Turner, a registered surveyor (L-2726). A portion of such survey is attached to that deed recorded in Deed Book 134, at page 820, in the Watauga County Public Registry and is incorporated herein by reference solely for the purposes of identifying and describing Lot 9.

Being the same property as described in that deed recorded in Deed Book 134, at page 820 in the Watauga County Public Registry.

## TRACT II

Lying and being in the town of Blowing Rock, Watauga County, North Carolina, fronting on Terry Acres Circle and being more particularly

2

described as follows:

Beginning at a PK nail, set in paved drive, the edge of Terry Acres Circle, the Northeast corner of Lot 5 herein described and being the Southeast corner of Lot 4, property of Paul Smith (Book 99, page 150) and running thence South 22-27 East 53.01 feet to an iron pin, Northeast corner of Lot 6, thence South 58-07 West 149.36 feet to an iron pin, common line of Greenpark Associates (Book 229, page 715); thence North 34-56 West 26.30 feet to an iron; thence North 29-37 West 50.06 feet to an iron; thence North 32-17 West 11.95 feet to an iron, corner of The Village at Greenpark Phase II, (Book 6, page 11); thence North 24-48 West 57.73 feet to an iron pin, corner of Paul Smith; thence with the line of Paul Smith, North 89-55 East 176.99 feet to the beginning iron, containing 15,560 square feet, more or less.

The above-described property constitutes Lot 5 as shown on a plat of survey entitled "Survey for Greenpark Inn", dated October 3, 1988, and revised on November 14, 1988, prepared by John W. Turner, registered surveyor (L-2726). A portion of such survey is attached to that deed recorded in Deed Book 134, at page 824 in the Watauga County Public Registry and is incorporated herein by reference solely for the purposes of identifying and describing Lot 5.

Being the same property conveyed by deed recorded in Deed Book 134, at page 824 in the Watauga County Public Registry.

8.    The consideration given for the transfer of said real property was from the plaintiff.

9.    As a result of the consideration given by the plaintiff, on the 1st day of September, 1989, the two tracts of real property described hereinabove were transferred to the son of the plaintiff, Stephen T. Douglas and his attorney in the litigation which resulted in the tracts being transferred in settlement thereof, Richard H. Tomberlin, as tenants in common by deeds recorded in Deed Book 134, at page

3

820, and Book 134, at page 824 in the Watauga County Public Registry.

10.    By virtue of the relationship existing between the defendant, Stephen T. Douglas, and the plaintiff, defendant Stephen T. Douglas owed a fiduciary duty to plaintiff, which was breached by the defendant, Stephen T. Douglas as set forth hereinbelow, the damage of the plaintiff.

11.    At the time of the transfer of said real property, the plaintiff and the defendant, Stephen T. Douglas constituted a close knit family unit bound together by love and affection, each member of which had and imposed implicit trust and confidence in the other.

12.    On or about the 1st day of September, 1989, the plaintiff and the defendant, Stephen T. Douglas entered into an oral agreement by the terms of which said real property would be vested in the defendant, Stephen T. Douglas's name to hold for the plaintiff.

13.    The defendant, Stephen T. Douglas advanced absolutely no consideration towards the purchase or acquisition of said real property described hereinabove.

14.    Tract II was thereafter conveyed to attorney, Richard H. Tomberlin as fee for his services in the litigation between the plaintiff and Greenpark, Inn, litigation in which the defendant, Stephen T. Douglas had not been involved and in which he had no interest whatsoever. A deed to said defendant for Lot 9, described as Tract I above, was prepared at the direction of the plaintiff and delivered to Stephen. Said deed may not have been recorded.

15.    At the time of and prior to the execution and delivery of the deed to the defendant, Stephen T. Douglas of Tract I plaintiff had the utmost trust and confidence in defendant Stephen T. Douglas as his son and in his son's devotion and fidelity to him. By reason of this confidence and in reliance on the representations of the defendant, Stephen T. Douglas, that he would hold said property in his name for the benefit of the plaintiff, plaintiff had said lot put in his son's name.

16.    Thereafter, plaintiff requested the defendant, Stephen T. Douglas to execute and deliver a deed for said real property, being Tract I described above, but defendant refused and still refuses to do so.

17.    By reason of the fact that plaintiff paid the consideration for said real property, plaintiff has an equitable title thereto, and defendant, Stephen T. Douglas is obligated in equity to hold his legal title for the benefit of the plaintiff.

## CLAIM II

4

18. Some time prior to February 23, 1993, the plaintiff and the defendant, Bygie S. Mattick were divorced.

19. The plaintiff, looking for a place to live, learned from his friend that Home Federal Savings and Loan Association had foreclosed on a condominium unit located in Mecklenburg County, North Carolina, being more particularly described hereinbelow. An agreement was reached between the plaintiff and Home Federal Savings and Loan Association under what terms and conditions the plaintiff would acquire said condominium unit.

20. During this time, the plaintiff and the defendant, Stephen T. Douglas constituted a closely knit family unit bound together by love and devotion, each member of which had an reposed implicit trust and confidence in the other.

21. On or about the 23rd day of February, 1993, the plaintiff and the defendant, Stephen T. Douglas entered into an oral agreement whereby the plaintiff would acquire the condominium unit described hereinbelow and the defendant, Stephen T. Douglas would hold said condominium unit in his name for the use and benefit of the plaintiff.

22. At the time of and prior to the execution and delivery of the deed to the defendant, Stephen T. Douglas, the plaintiff had the utmost trust and confidence in said defendant has his son, and in his son's devotion and fidelity to him. By reason of this confidence and on reliance of the representations of the defendant, Stephen T. Douglas, the plaintiff allowed title to said real property to be transferred in the name of his son, Stephen T. Douglas.

23. By virtue of the relationship existing between the defendant, Stephen T. Douglas and the plaintiff, defendant, Stephen T .Douglas owed a fiduciary duty to the plaintiff, which was breached, as set forth hereinbelow, to the damage of the plaintiff.

24. On or about the 23rd day of February, 1993, Home Federal Savings and Loan Association transferred by General Warranty Deed to Stephen T. Douglas pursuant to the oral agreement described hereinabove that real property more particularly described as :

Being all of that certain condominium unit known as 4741 Hedgemore Drive, Unit 2-T of the Franciscan Terrace Condominiums, as described in the declaration of the Franciscan Terrace Condominiums under the North Carolina Unit Ownership Act, recorded in Deed Book 4317, at page 170, and in Unit Ownership File number 88, of the

5

Mecklenburg County public Registry, together with a .7979 percent interest in the common areas and facilities of the Franciscan Terrace Condominiums as described hereinabove and being located in the City of Charlotte, County of Mecklenburg, State of North Carolina.

Being that same real property described in that deed recorded in Deed Book 7205, at page 805 in the Mecklenburg County Public Registry.

25. The defendant, Stephen T. Douglas, had nothing to do with the negotiation, consideration, or acquisition of said condominium unit.

26. Subsequent to the acquisition of the condominium unit as described hereinabove, the plaintiff occupied and lived in the condominium unit. The defendant, Stephen T. Douglas also resided there. The plaintiff made the payments on the loan in favor of Home Federal Savings and Loan Association. The plaintiff also made the payments for insurance, taxes, homeowners association dues, and assessments.

27. The entire consideration given for the acquisition of said condominium unit was paid by the plaintiff. The plaintiff was and is living on a limited fixed income. The defendants were aware that the plaintiff acquired this condominium unit at a mortgage payment he could afford, leaving enough income to barely live on.

28. Subsequent to the acquisition of said condominium unit, the defendant, Bygie S. Mattick, along with the then minor children of said defendant and the plaintiff, resided in the condominium with the plaintiff on at least two different occasions for lengthy periods of time. The defendant, Bygie S. Mattick was informed of and knew about how said condominium unit was acquired and why it was titled in the name of the defendant, Stephen T. Douglas. She knew the plaintiff was making all payments related thereto. The defendant, Bygie S. Mattick at all times herein knew that said condominium unit in fact belonged to the plaintiff.

29. Subsequent to the last time the defendant, Bygie S. Mattick resided with the plaintiff in the condominium unit as set forth above, and prior to December, 1999, the defendant, Bygie S. Mattick sued the plaintiff for alleged breach of a Separation and Property Settlement Agreement between the plaintiff and the defendant, Bygie S. Mattick. In that litigation, the defendant, Bygie S. Mattick sought hundreds of thousands of dollars in damages for said alleged breach. The lawsuit between the plaintiff and the defendant, Bygie S. Mattick was settled for a fraction of the total amount sought by said defendant.

30. Upon information and belief, the defendant, Stephen T. Douglas, in or about late 1999 became desperate for funds. Stephen T. Douglas approached the plaintiff,

6

requesting funds which the plaintiff did not have to give to said defendant. Upon information and belief, the defendant, Stephen T. Douglas, unknown to the plaintiff, approached the defendant, Bygie S. Mattick for said funds.

31. The defendants, Bygie S. Douglas and Stephen T. Douglas, knowing at all times pertinent hereto that said condominium unit described hereinabove belonged to the plaintiff, who provided all the consideration therefore, conspired together to deprive the plaintiff of his lawful and rightful interest therein.

32. At the end of 1999, upon information and belief, said condominium unit was worth approximately $85,000.00.

33. On or about the 29th day of December, 1999, with full knowledge of plaintiff's lawful and equitable ownership interest in said condominium unit, the defendant, Stephen T. Douglas, conveyed to the defendants, Michael J. Mattick and wife Bygie S. Mattick the condominium unit more particularly described hereinabove by deed recorded in Deed Book 10998, at page 808, in the Mecklenburg County Public Registry.

34. By reason of the fact that plaintiff paid the consideration for said condominium unit, plaintiff has an equitable title thereto, and the defendants are obligated in equity to hold his legal title for the benefit of the plaintiff.

## CLAIM III

35. The approximate payoff at the time of the transfer of said condominium unit to the defendants, Mattick, on the loan and deed of trust held by Home Federal Savings and Loan Association was in the approximate amount of $39,483.20. The consideration paid by the defendants, Mattick, to the defendant, Stephen T. Douglas, was approximately $54,500.00.

36. The defendant Michael J. Mattick, husband of the defendant Bygie S. Mattick, at all times, upon information and belief, knew of the scheme of his wife and the defendant, Stephen T. Douglas to deprive the plaintiff of his rightful, legal, and equitable interest in said condominium unit.

37. Stephen T. Douglas made the transfers to the defendants, Mattick, without receiving a reasonably equivalent value in exchange for the transfer.

38. The defendants entered into an agreement whereby to deprive the plaintiff of his equitable interest in this condominium. In furtherance of that agreement, the defendant, Stephen T. Douglas was paid approximately $15,000.00, the lien to Home Federal was paid off, and the defendants, Mattick acquired the property at a

7

price far below market value.  These overt tortuous acts were done in furtherance of this conspiracy causing damages in excess of $10,000.00 to the plaintiff.

## CLAIM IV

39.  The defendants, Mattick, paid inadequate consideration for the condominium unit described hereinabove. They have unjustly enriched themselves at the expense of the plaintiff and the plaintiff is entitled to recover damages for said unjust enrichment.

Wherefore, the plaintiff respectfully prays the court as follows:

1.  This verified complaint be treated as an affidavit for all purposes in this cause.

2.  This court enter a decree directing the defendants Mattick, to convey to the plaintiff legal title to said property.

3.  In the alternative, the plaintiff be awarded damages in an amount to be determined for the unjust enrichment of the defendants.

4.  The plaintiff be.awarded damages for the defendant, Stephen T. Douglas's breach of fiduciary duty.

5.  The plaintiff be awarded damages from the defendant as a result of their civil conspiracy.

6.  The cost of this matter be taxed against the defendants.

7.  For such other and further relief as to which the plaintiff may be justly entitled.

This the _8th_ day of February, 2000.

J. A. Warren, Jr.
1001 Elizabeth Avenue
Suite 2A
Charlotte, NC 28204
333-7770

8

STATE OF NORTH CAROLINA

COUNTY OF MECKLENBURG

## VERIFICATION

The undersigned, being first duly sworn, deposes and says that the undersigned is the Plaintiff in the above entitled action, that Plaintiff has read the foregoing Pleading/papers and knows the contents thereof; that the same are true to Plaintiff's own knowledge, except as to those matters stated on information and belief; and as to those matters, the Plaintiff believes them to be true.

_Ben E. Douglas_

Sworn to and subscribed before me,

this _8th_ day of _February_, 2000.

_JC Edmonds_
Notary Public

My Commission Expires: _10-8-04_